* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback and the briefs before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commission Stanback with modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are properly before the Industrial Commission, and the Industrial *Page 2 
Commission has jurisdiction of the parties and of the subject matter.
2. The parties have been correctly designated, and there are no questions as to misjoinder or nonjoinder of parties.
3. Where documents are to be entered as evidence or produced pursuant to subpoena, photocopies of said documents produced by the party in possession of the original document shall be acceptable.
4. The parties are subject to the Workers' Compensation Act.
5. The employment relationship existed between the Employee-Plaintiff and Employer Defendant.
6. The insurance carrier at risk is Zurich American.
7. The date of plaintiff's injury was February 13, 2001.
8. Plaintiff's injury to his right leg was the result of the accident on February 13, 2001, which arose out of and in the course of his employment with Defendant.
9. The average weekly wage is $1,050.00, yielding a compensation rate of $620.00 per week.
10. The parties stipulate to the authenticity and introduction into evidence of the medical and personnel records of Employee-Plaintiff, which are marked as follows:
 a. Plaintiff's Exhibit #1 — Records of Dr. William VanNess
 b. Plaintiff's Exhibit #2 — Records from various providers
 c. Stipulated Exhibit #2 — Records from the Pain and Rehab Institute
 d. Stipulated Exhibit #4 — Records from Dr. Mark Hines, additional notes from OrthoCarolina, and records from Dr. Michael Haahs
 e. Stipulated Exhibit #5 — Social Security Administration favorable report
 f. Stipulated Exhibit #6 — Plaintiff's personnel records *Page 3 
11. The parties stipulated to the prior Order from the Industrial Commission on Defendants' Motion for Compliance, marked as Stipulated Exhibit #3.
12. The Plaintiff is receiving Social Security Disability benefits (since July 2003).
13. The parties further agreed that the issues are:
 a. Is Employee-Plaintiff totally and permanently disabled?
 b. Is Employee-Plaintiff entitled to treatment by Dr. Hines, as referred by Dr. VanNess, for pain related issues to his right leg?
 c. Whether Employee-Plaintiff can return to work.
 d. Whether Employee-Plaintiff's left leg condition is compensable.
 * * * * * * * * * * *
Based upon all the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. On the date of the hearing before the Deputy Commissioner, plaintiff was forty-nine (49) years old. Plaintiff has a twelfth grade education. He has a long history of working as a welder or as a heavy equipment operator.
2. On February 13, 2001, plaintiff was working as a welder for defendant-employer. He was helping place a piece of pipe attached to a crane when he fell, landing on his back and buttocks across a piece of wood. A large pipe then fell on him, striking his right leg, thigh, and lower back.
3. As a result of the February 13, 2001 workplace injury, plaintiff was diagnosed with a crush injury to the right sciatic nerve, in two places.
4. Defendants accepted plaintiff's claim. On January 2, 2003, the Commission approved a Form 21 agreement for temporary total disability benefits for 12.1 weeks, covering various dates from March 19, 2001 through January 6, 2002. *Page 4 
5. Plaintiff was found to be at maximum medical improvement (MMI) on March 19, 2002. However, at the time, Dr. Eric Laxer did not assign plaintiff a permanent partial impairment (PPI) rating.
6. On June 26, 2002, Dr. Laxer assigned plaintiff a thirty percent (30%) PPI rating to his right leg. A Form 26 agreement was approved by the Commission on January 2, 2003 for plaintiff's 30% PPI rating.
7. Plaintiff was rated again by Dr. Laxer on September 12, 2003. Dr. Laxer's assessment was lumbar strain and right sacroiliac strain, which Dr. Laxer opined was related to plaintiff's work injury. Dr. Laxer was of the opinion that plaintiff was at MMI with regard to his lower back. He noted that plaintiff had no surgical indication and would require continued pain management. Dr. Laxer assigned a PPI rating of 7.5% to plaintiff's right lower back.
8. On May 12, 2004, plaintiff was rated by Dr. Mark Goodson. Dr. Goodson noted that plaintiff suffered a distal sciatic nerve injury. Using the AMA Guide, Dr. Goodson opined plaintiff had suffered a sixty-one percent (61%) PPI of his right lower extremity secondary to his sciatic nerve injury and residual weakness and a thirty-seven percent (37%) impairment due to his associated gait disturbance. Dr. Goodson noted that this equates to a seventy-five percent (75%) total impairment to plaintiff's right lower extremity secondary to the injuries sustained. Dr. Goodson further noted that plaintiff has chronic low back pain and SI joint dysfunction, as well as pre-existing degenerative arthritis. Dr. Goodson opined that plaintiff's gait disturbance would no doubt accelerate exacerbate plaintiff's back pain symptoms. Thus, he ascribed a 2.5% PPI rating to plaintiff's back.
9. Since his admittedly compensable injury, plaintiff has treated with several doctors. Pursuant to a Commission Order, plaintiff is currently treating with Dr. VanNess. Dr. VanNess initially evaluated plaintiff on November 10, 2005.
10. In addition to the crush injury to the right sciatic nerve, Dr. VanNess diagnosed plaintiff *Page 5 
with persistent pain, weakness, and walking or gait abnormalities, also muscle wasting or atrophy of the muscle groups supplied by the portions of the sciatic nerve that were damaged. Dr. VanNess further noted that plaintiff had low back pain, specifically sacroiliac joint pain on the right side. Dr. VanNess opined that this was most likely related to the weakness in his leg and the changes in his walking pattern, in addition to the initial injury. Dr. VanNess also found plaintiff had a lot of muscle-based problems in the low back and gluteal or hip area, called trigger points or myofascial pain, which is unhealthy muscle tissue that frequently occurs in people with chronic pain that have had injuries or trauma.
11. Dr. VanNess opined that crush injuries are tough to get a good recovery or good result with. He indicated that they are a tough type of nerve injury to surgically repair or try to get improvement surgically. Dr. VanNess indicated that the nerve damage is permanent.
12. Plaintiff had pre-existing left ankle problems. In 1995, plaintiff fractured his left ankle after falling off of scaffolding and landing on a cement floor. Subsequently, he fractured the same ankle in the subtalar joint. In 1997, plaintiff underwent fusion surgery of the left ankle.
13. On May 16, 2005, plaintiff underwent surgery to remove hardware from his left ankle with Dr. Robert Anderson. Plaintiff indicated to Dr. VanNess that he fell and reinjured his left ankle when his right leg went out. Dr. VanNess indicated that plaintiff's left ankle had been asymptomatic until Dr. VanNess opined that the further injury to plaintiff's left ankle would have been less likely if plaintiff had a normal functioning right leg.
14. The evidence indicates that plaintiff's left ankle was doing well and remained asymptomatic until his admittedly compensable right leg injury. Based on the greater weight of the evidence, the Full Commission finds that as a result of the injury to his right leg, plaintiff sustained further injury to his left ankle, ultimately requiring surgery with Dr. Anderson on May 16, 2005.
15. Plaintiff saw Dr. Anderson on January 26, 2006. Dr. Anderson noted that plaintiff is unable to stand and walk for any period of time. Dr. Anderson opined that plaintiff is permanently and *Page 6 
totally disabled in regard to his lower extremity condition. He further noted that plaintiff is unable to continue with his heavy labor activities.
16. Plaintiff has additional medical issues. Dr. VanNess noted that plaintiff also has bladder and prostate problems. Plaintiff has right rotator cuff tear that required surgical repair. Additionally, Dr. VanNess noted plaintiff suffers from a moderate, if not severe, traumatic brain injury from a motorcycle accident in 2000. Plaintiff hit a tree while traveling 90 mph. Plaintiff suffered four skull fractures. Dr. VanNess opined that plaintiff had a fairly classic presentation of someone that had had a brain injury. Dr. VanNess noted plaintiff had displayed confusion, not understanding questions, getting lost in his train of thought and then getting frustrated.
17. Dr. VanNess does not prescribe narcotic pain medication and referred plaintiff to Dr. Mark Hines for pain management. On June 8, 2007, plaintiff saw Dr. Hines. Dr. Hines indicated that clearly plaintiff's injury is chronic given the atrophy and the footdrop distally. He further noted that given the multiple years since the time of the injury, it is unlikely that plaintiff will get any further improvement or resolution of his motor function. Dr. Hines believed it questionable that plaintiff would get any meaningful pain relief, but thought that there were some options to consider.
18. Dr. VanNess opined that plaintiff is permanently and totally disabled. Dr. VanNess noted that his concern was the whole picture, which includes plaintiff's brain injury. Dr. VanNess opined that at best he could see plaintiff trying to do sedentary work; however, because of plaintiff's brain injury he does not think he is a good candidate for vocational rehab. Dr. VanNess noted plaintiff's difficulties with following commands, his cognitive impairment, his back problems, and the right leg injury in concluding plaintiff is totally and permanently disabled.
19. Plaintiff will need ongoing medical care including leg bracing, physical therapy, and chronic pain management. Plaintiff will also need a cane and to continue to be checked by an orthotist. Plaintiff requires custom shoes to give him proper support for both legs. Dr. VanNess felt plaintiff may *Page 7 
need a walker at some point, and hoped plaintiff could avoid a wheelchair.
20. The greater weight of the evidence establishes that plaintiff's injuries are permanent. Plaintiff is at maximum medical improvement.
21. The Full Commission finds that the plaintiff is permanently and totally disabled. The greater weight of the evidence establishes that plaintiff is incapable of earning wages in any employment. Further, the greater weight of the evidence establishes that it would be futile for plaintiff to seek other employment given his work history consisting of only heavy manual labor, a lack of transferrable skills, his mental limitations due to his traumatic brain injury, and his lack of education beyond the twelfth grade.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On February 13, 2001, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment with defendant-employer when he sustained a crush injury to the sciatic nerve in his right leg. N.C. Gen. Stat. § 97-2(6).
2. When the primary injury is shown to have arisen out of an injury by accident, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause. Thus, a subsequent injury is compensable if it is the direct and natural result of the compensable primary injury. Starr v.Charlotte Paper Co., 8 N.C. App. 604, 175 S.E.2d 342 (1970). Based on the greater weight of the evidence, as a direct and natural consequence of plaintiff's compensable injury to his right leg, he developed lower back pain. Additionally, the greater weight of the evidence establishes that plaintiff's re-injury of his left ankle and foot was a direct and natural consequence of his compensable injury to his right leg. Therefore, *Page 8 
plaintiff's low back pain and re-injury of his left foot and ankle are compensable. Starr v. Charlotte Paper Co., 8 N.C. App. 604,175 S.E.2d 342 (1970).
3. The plaintiff is at maximum medical improvement. The date of maximum medical improvement marks the end of the healing period under N.C. Gen. Stat. § 97-31. The healing period ends when after a course of treatment and observation, the injury is discovered to be permanent and that fact is duly established. Crawley v. Southern Devices, Inc.,31 N.C. App. 284, 289, 229 S.E.2d 325, 329 (1976), disc. reviewdenied, 292 N.C 467, 234 S.E.2d 2 (1977). The greater weight of the medical evidence establishes that plaintiff's healing period has ended. The fact that plaintiff's injuries are permanent is clearly established by the medical evidence.
4. In a workers' compensation claim for permanent and total disability, plaintiff has the burden of proving the existence and extent of disability. Hunt v. North Carolina State University,159 N.C. App. 111,582 S.E.2d 380 (2003), citing Saunders v. Edenton Ob/Gyn Ctr.,352 N.C. 136, 530 S.E.2d 62 (2000); Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993). A plaintiff may meet the initial burden by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of pre-existing conditions, such as age, inexperience, or lack of education, to seek other employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages.Demery v. Perdue Farms, 143 N.C. App. 259, 535 S.E. 2d 485 (2001);Russell v. Lowes Product Distribution, supra. When an employee meets his burden of showing disability, the burden shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms, Inc.,supra. *Page 9 
5. In the present case, due to his injury by accident, plaintiff is incapable of work in any employment given the physical limitations he suffers. Moreover, it would be futile for plaintiff to search for employment given his work history consisting of only heavy manual labor, a lack of transferrable skills, his mental limitations due to his traumatic brain injury, and his lack of education beyond the twelfth grade. Defendants have provided insufficient evidence that suitable jobs are available to plaintiff and that plaintiff is capable of obtaining a suitable job, given his physical and vocational limitations. For these reasons, plaintiff is totally and permanently disabled. N.C. Gen. Stat. § 97-29.
6. Because plaintiff is found to be totally and permanently disabled, he is entitled to total and permanent disability compensation at the rate of $620.00 per week for the remainder of his life. N.C. Gen. Stat. § 97-29.
7. Plaintiff is entitled to receive and defendants are obligated to provide to plaintiff reimbursement for medical treatment resulting from the re-injury to his left foot, and plaintiff is entitled to receive and defendants are further obligated to provide continuing medical treatment for plaintiff's left foot and ankle that is reasonably required to effect a cure, give relief, or lessen plaintiff's disability. N.C. Gen. Stat. § 97-25.
8. Plaintiff is entitled to receive and defendants are obligated to provide to plaintiff such medical treatment as is reasonably required as a result of plaintiff's compensable injuries to effect a cure, give relief, or lessen plaintiff's disability, including pain management by Dr. Hines. N.C. Gen. Stat. § 97-25.
 * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 AWARD
1. Defendants shall pay plaintiff permanent total disability compensation at a rate of *Page 10 
$620.00 per week continuing for the remainder of plaintiff's life.
2. Defendants shall provide for all reasonable and necessary medical treatment that was or is related to plaintiff's compensable injury by accident, including the re-injury to his left foot and ankle for the remainder of plaintiff's lifetime, to the extent such treatment tended or tends to effect a cure, give relief, or lessen plaintiff's disability, including pain medication management by Dr. Hines. Medical bills are payable when the medical bills have been submitted according to established Industrial Commission procedures. 3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel to be paid as follows: every fourth compensation check due plaintiff shall be deducted from the sum due plaintiff and paid directly to plaintiff's counsel.
4. Defendants shall pay the costs of this proceeding.
This the 28th day of April, 2008.
 S/___________________
 DANNY LEE McDONALD
 COMMISSIONER
CONCURRING:
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
 S/___________________ DIANNE C. SELLERS COMMISSIONER *Page 1